UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID WHITE, <br><br> *Plaintiff,* <br><br> *v.* <br><br> CORELOGIC NATIONAL BACKGROUND DATA, LLC, <br><br> *Defendant.* | Civil No. 3:22-cv-00072 (JBA) <br><br><br> March 30, 2023 |

**RULING ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

Plaintiff David White filed the Amended Complaint in April 2022 against Defendant Corelogic Background Data, LLC, formerly CoreLogic National Background Data, LLC ("NBD") based on two alleged violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681. First, Plaintiff alleges that Defendant violated the FCRA § 1681e(b) by failing to follow reasonable procedures to ensure maximum accuracy of the information provided in the consumer reports that it sold regarding Plaintiff for employment screening purposes. Second, Plaintiff alleges Defendant violated FCRA 15 U.S.C § 1681k(a)(1) by failing to notify Plaintiff that it had provided an employment-purposed consumer report containing public record information that was likely to adversely affect Plaintiff's ability to obtain or maintain employment.

Defendant now moves to dismiss the Amended Complaint in its entirety for lack of personal jurisdiction and improper venue [Doc. # 36]. It argues it is not subject to personal jurisdiction in Connecticut because it is a non-resident entity that lacks minimum contacts

with the forum state. Plaintiff maintains that jurisdiction is proper but, in the alternative, asks for a transfer to the District of Maryland if this Court finds a lack of personal jurisdiction.

## I.        Factual Background

Plaintiff is a Missouri resident who was hired for an athletic coaching position at Yale University in March 2010. (Am. Compl. ¶¶ 16, 18.) After submitting to a background check, traveling to New Haven to begin his employment, and signing his employment contract, Plaintiff met with the Yale athletic administration in New Haven and was told that his contract was revoked due to the results of his background check. (*Id.* ¶¶ 19-20.) Plaintiff alleges that the Yale administrator at the meeting "appeared uncomfortable to sit in a room" with him and provided no details as to why the background check had led Yale to terminate his contract. (*Id.* ¶ 20).

When he returned to Oklahoma, Plaintiff was informed his prior position as an assistant football coach at the University of Oklahoma had been filled. (*Id.* ¶ 21.) From March 2010 to January 2017, Plaintiff was unable to obtain a professional coaching job in his field. (*Id.*) In February 2018, Plaintiff became aware that NBD had been publishing false information about him and provided to Yale a report that represented Plaintiff was a registered sex offender. (*Id.* ¶¶ 22-23, 33). Plaintiff is not nor has ever been a registered sex offender. (*Id.* ¶ 24.)

The background check was requested by Yale from ADP Screening and Selection Services ("ADP"). ADP itself sought background information regarding Plaintiff from Defendant NBD, which in turn requested a report from SafeRent Solutions, LLC, formerly CoreLogic Rental Property Solutions, LLC ("SafeRent"). (*Id.* ¶ 19.)

## II.     Discussion

### A.     Propriety of Personal Jurisdiction

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).[1] "In evaluating whether the requisite showing has been made, [courts] construe the pleadings and any supporting materials in the light most favorable to the plaintiff[ ]." *Id.*

"To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the Court must engage in a two-step analysis." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). First, the Court applies "the forum state's long-arm statute." *Id*. "If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Id*. at 164.

#### 1.     Connecticut Long-Arm Statute

Plaintiff makes a number of arguments for jurisdiction under Connecticut's long-arm statute, the strongest of which is § 52-59b(a)(3), which covers tortious acts committed outside Connecticut that cause in-state injury. (Pl.'s Opp'n [Doc. 37] at 14.) Plaintiff claims that because he suffered "direct economic injury" in Connecticut, by traveling to New Haven to begin employment only to have his contract terminated, this section confers long-arm jurisdiction. (*Id.*) Defendant argues any injury felt by Plaintiff occurred in Oklahoma, Plaintiff's state of residence. [2]   (Def.'s Mem. ISO Def.'s Mot. to Dismiss [Doc. # 36-1] at 6.)

---

[1] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

[2] Defendant maintains that because any injury occurred when NBD sent the data from Florida to ADP in Colorado on March 11, 2010, and Plaintiff is vague as to what day he

Defendant also argues that an out-of-state injury that later leads to harm felt in Connecticut is insufficient to create personal jurisdiction. (*Id.* at 3.)

Jurisdiction under § 52-59b(a)(3) applies when a nonresident "commits a tortious act outside the state causing injury to person or property within the state." Both parties agree that for this section of the statute, "the determinative factor is evidence of direct economic injury to the plaintiff within the state." *Greene v. Sha-Na-Na*, 637 F. Supp. 591, 597 (D. Conn. 1986). Plaintiff claims that because he was fired in Connecticut by Yale after he moved to New Haven to start his position, he suffered direct economic injury, i.e., termination of his coaching employment, in Connecticut. (Pl.'s Opp'n at 14.) Defendant focuses on the location of the original injury-causing event, relying on *Shaughnessy v. Southern*, No. 3:18-cv-939 (MPS), 2019 WL 1922292, at *6 (D. Conn. Apr. 30, 2019) and *Robb v. Robb*, 620 F. Supp. 2d 282, 287 (D. Conn. 2009). Defendant argues that because the Plaintiff's claims challenge the procedures used by NBD to transmit data to ADP, its potential liability attached when NBD transmitted the data from Florida to ADP in Colorado on March 11, 2020. (Defs.' Reply. at 4.)

But *Shaughnessy* and *Robb* are distinguishable from this case. There, the alleged tortious conduct was carried out entirely out-of-state, with no link to Connecticut other than it being the residence of the injured party. *Shaughnessy*, 2019 WL 1922292, at *6; *Robb*, 620 F. Supp 2d at 287. Here, the tortious conduct alleged to have caused direct injury in Connecticut is providing Yale with false personal information on which it based its termination of Plaintiff from the job he had moved to Connecticut to begin. If the location of the defendant when it initiated its tortious conduct were entirely determinative of long-arm jurisdiction, § 52-59b(a)(3) would be turned into a redundant rearticulation of § 52-59b(a)(2). The key

---

travelled to Connecticut to begin his employment, the injury cannot be said to have occurred in Connecticut. (Def.'s Reply [Doc. # 38] at 4.)

distinction between the two sections is that § 52-59b(a)(3) applies when a nonresident "commits a tortious act *outside* the state causing injury to person or property within the state", whereas jurisdiction under § 52-59b(a)(2) applies when a nonresident "commits a tortious act *within* the state." While it is accurate that Connecticut is not a viable forum when the injury felt here is merely a later ripple-effect of a harm perpetrated elsewhere, that does not render Connecticut an inappropriate forum where the direct result of the tortious conduct is injury in Connecticut as alleged here. As such, Connecticut's long-arm statute extends to this case under § 52-59b(a)(3).

### 2.    Due Process

Plaintiff argues that this Court has specific personal jurisdiction over Defendant. (Pl.'s Opp'n at 15.) The due process test for specific jurisdiction includes two components: 1) the minimum contacts inquiry; and 2) the reasonableness' inquiry. *See, e.g.*, *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016).

### a)    Minimum Contacts

"Where the claim arises out of, or relates to, the defendant's contacts with the forum… minimum contacts… exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). This test looks to the totality of the defendant's contacts with the forum state. *Id.*

Defendant argues that it lacks minimum contacts with the forum state because it has not purposefully availed itself of the privilege of doing business in Connecticut, noting that all of Plaintiff's claims arise from NBD's transmission of data to ADP in response to ADP's search query. (Def.'s Mem. at 10.) Because neither NBD nor ADP were in Connecticut when this transmission of data was requested and completed, Defendant argues NBD lacks minimum contacts with the forum state. (*Id.*) Defendant references another suit against it with similar

facts involving a college in Pennsylvania, *Alvarez v. CoreLogic National Background Data, LLC*,
No. 2:18-cv-1234 (HB), 2018 U.S. Dist. LEXIS 111697 (E.D. Pa 2018), which found no general
or specific jurisdiction:

> CoreLogic maintains a nationwide database of public records. It then sells
> access to this information to background screening companies that have been
> engaged by employers to conduct background screenings on prospective
> employees . . . . . CoreLogic is organized in the state of Delaware and maintains
> its principal place of business in Texas. As a result, it is not subject to general
> jurisdiction in this district.
>
> Nor is it subject to specific jurisdiction here. CoreLogic performed the
> background check on Alvarez on behalf of its client ADP, which is based in New
> Jersey. CoreLogic then submitted to ADP its information on Alvarez through
> electronic means. It had no contact with Alvarez or his prospective employer
> Manor College in Pennsylvania. CoreLogic maintains no employees or offices
> in Pennsylvania. Under these circumstances, CoreLogic has not purposefully
> directed its activities at this forum.

*Id.* at *1-2.

Defendant also claims that, even if it knew that its services would have an impact on
someone in Connecticut, that was insufficient to constitute minimum contacts with the
forum state. (Def.'s Mem. at 11-13.) Plaintiff focuses on *Calder v. Jones*, in which the Supreme
Court examined the "effects" of a foreign defendant's conduct in the forum state. 465 U.S.
783, 789 (1984). In *Calder*, personal jurisdiction was found to be proper in California where
a California-based professional entertainer brought a libel suit against individuals employed
by the National Enquirer—which has its biggest circulation in California—after the
individual journalists had written and edited an allegedly libelous article in Florida. *Id.* at
788-90.

Plaintiff has failed to plead any facts plausibly showing how Defendant purposefully
availed itself of the forum state, Connecticut. The crux of Plaintiff's argument is that NBD's
conduct related to an employment matter in Connecticut, NBD's personnel background
reports are often sold by resellers to Connecticut employers, and NBD was allegedly aware

that the background report for Plaintiff David White was being requested by Yale University. (Compl. ¶ 15.) However, that is insufficient to constitute minimum contacts between NBD and Connecticut.

*Calder*, on which Plaintiff relies for the proposition that personal jurisdiction is proper where the defendant can reasonably anticipate that the effects of its conduct would be felt in the forum state, (Pl.'s Opp'n at 15-16), is contextualized by *Walden v. Fiore*, which clarified that "the plaintiff cannot be the only link between the defendant and the forum" because "[d]ue process . . . requires that a defendant be haled into court in a forum State based on [its] own affiliation with the State." 134 S. Ct. 1115, 1122-23 (2014). The Second Circuit has made clear that post-*Walden*, a defendant must "expressly aim" its conduct at the forum state for jurisdiction to be proper. *Waldman*, 835 F.3d at 337. There is no allegation that NBD directly reached out to Connecticut in any way. In *Waldman*, "random and fortuitous" attacks by a terrorist organization which killed U.S. citizens did not subject that organization to personal jurisdiction in the United States, even if the defendant had been aware that one of the victims was from the United States, where the defendant "does nothing in connection with the tort in that jurisdiction." *Id.* at 333-38. The Second Circuit found that "the plaintiffs point us to no evidence that these indiscriminate terrorist attacks were specifically targeted against United States citizens, and the mere knowledge that United States citizens might be wronged in a foreign country goes beyond the jurisdictional limit set forth in Walden." *Id.* Thus, even if NBD was aware that the report it prepared on Plaintiff was going to end up in the hands of a Connecticut employer, that alone would be insufficient to subject it to the jurisdiction of courts in Connecticut.

Plaintiff points to *Ford Motor Company v. Montana Eighth Judicial District Court*, 141 S.Ct. 1017 (2021), to support his claim of personal jurisdiction in Connecticut. (Pl.'s Opp'n at 19.) Ford had argued that it could not be subject to personal jurisdiction in the two states

where two of its cars malfunctioned, because the cars in question were not sold, designed, or manufactured in those states. *Ford*, 141 S.Ct. at 1022. Ford's position was that, even if it had purposefully availed itself of the markets in those states, there was no direct causal link between its commercial activities in those states and the specific tortious conduct at issue (relating to the cars' sale, design, and manufacture), and thus jurisdiction was improper. *Id.* at 1026. However, the Supreme Court found Ford's argument that a direct causal link was required to be overly rigid, noting that so long as the suit "relate[s] to" the defendant's contact with the forum, jurisdiction was proper, in light of Ford's significant commercial presence in the states, including dealerships and marketing initiatives. *Id.* at 1023. Indeed, Ford did not even dispute that it had purposefully availed itself of the markets in the forum state as a result of its substantial commercial presence. *Id.* at 1026. The Supreme Court deduced that the reason the cars had been driven in the forum states could easily be related to Ford's contacts with the forum states, as Ford heavily advertised its brand in the states and provided dealerships ready to service Ford cars should they need repairs. *Id.* at 1028-29.

Plaintiff analogizes *Ford* to his case, arguing that because NBD's reports are consumed nationwide, and Connecticut is one of the many states where its reports are distributed in significant numbers, there is personal jurisdiction over Defendant. (Pl.'s Opp'n at 19-20.) However, Plaintiff's argument impermissibly exceeds the limits of *Ford*, which warned that *Ford* "does not mean anything goes." *Ford*, 141 S.Ct. at 1022. In comparison to Ford's prodigious commercial presence in the forum states at issue, the Amended Complaint does not claim NBD has any employees or offices in Connecticut. Plaintiff's position that NBD established minimum contacts in Connecticut by providing information to ADP, which provides background reference services nationwide, is too attenuated to show purposeful availment of Connecticut. *See, e.g.*, *Alvarez v. CoreLogic National Background Data, LLC*, No. 2:18-cv-1234, 2018 U.S. Dist. LEXIS 111697 (E.D. Pa. 2018) [*Alvarez* Doc. #36-5];

*Cunningham v. Nationwide Sec. Sols.*, Inc., No. 3:17-cv-337, 2018 WL 4575005, at *15 (N.D. Tex. Aug. 31, 2018) ("[S]ince the Supreme Court issued its decision in *Walden* and in relying on its holding, courts have held that a defendant's allegedly violating the FCRA to harm a plaintiff known to reside in the forum state, without more, does not establish purposeful availment of the forum state's privileges."); *Zellerino v. Roosen,* 118 F. Supp. 3d 946, 952 (E.D. Mich. July 29, 2015) ("[I]t is apparent that the defendants' conduct of accessing the plaintiff's credit report, which presumably took place in California, cannot furnish a basis for them to be sued in a Michigan court, even though the plaintiff felt the impact of that privacy breach in Michigan. None of the defendants' challenged conduct had anything to do with Michigan itself."). Based on the foregoing analysis, this Court concludes that due process deficiencies defeat personal jurisdiction in Connecticut over NBD.[3]

### B.    Alternative Request for Transfer to District of Maryland

Alternatively, Plaintiff requests transfer of his case to the District of Maryland, concerned that any new action commenced following a dismissal in this case would be time-barred. (Pl.'s Opp'n at 26.) "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The movant bears the burden of establishing the propriety of transfer by a clear and convincing showing." *Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 513 (D. Conn. 2011).

Plaintiff offers no support for transfer to Maryland other than his representation that Defendant's brief in *Witt,* a separate but related FCRA case against NBD, acknowledged that jurisdiction and venue would be proper in the District of Maryland. *Witt v. CoreLogic National*

---

[3] Given this outcome, there is no need to analyze the propriety of venue in the District of Connecticut.

*Background Data, LLC*, 3:15-cv-00386 (E.D. Va. 2015) [*Witt* Doc. # 52 at 2]. Defendant disputes this representation, arguing Plaintiff misrepresents its briefing and explaining that in *Witt*, SafeRent was one of the defendants seeking to transfer to Maryland, which is where SafeRent maintained certain operations. (*Id.*) NBD was a distinct entity from SafeRent, and thus Defendant maintains that what was argued in *Witt* does not suffice to show NBD's acquiescence to jurisdiction in Maryland. (*Id.*) In fact, the plaintiff in *Witt* argued that there is "nothing for the Court to conclude that venue would be proper in Maryland as to NBD, a vital point in the analysis." (Def. Reply at 10; Pl.s' Opp'n to Defs' Mot. to Dismiss or Transfer Venue [*Witt* Doc. # 34] at 18.) As NBD is the sole defendant in this case, this is indeed a vital point.

Because Plaintiff has not carried his burden to show that Maryland would be a viable alternative forum for this action, transfer is denied.

## III.    Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Doc. # 36] is GRANTED. The Clerk is requested to close this case.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of March, 2023

10